## Case No. 8,887.

### McLEAN v. LAFAYETTE BANK et al.

[3 McLean. 503;[1] 2 West. Law J. 441.]

Circuit Court, D. Ohio. Dec. Term, 1844.

BANKRUPTCY — APPOINTMENT OF RECEIVER — NOTICE—POSSESSION RELINQUISHED TO INCUMBRANCER.

1. Previous notice of a motion for the appointment of a receiver is not necessary, when counsel for the opposite party are present in court.

2. Where a bankrupt owned real estate incumbered by previous liens, which are before this court for adjustment, a receiver will be appointed on the application of the assignee in bankruptcy, although the bankrupt may have relinquished possession to some of the prior incumbrancers.

[Cited in Foster v. Ames, Case No. 4,965.]

[This was a bill by Nathaniel C. McLean, assignee in bankruptcy of John Mahard, Jr., and William Mahard, partners as John Mahard & Co., to set aside certain transfers of stock of the Lafayette Bank and mortgage of real estate made by the bankrupts, and claimed to be fraudulent as to their creditors. An injunction was granted to stay proceedings in the state court seeking to en-

[1] [Reported by Hon. John McLean, Circuit Justice.]

force the alleged fraudulent preferences. The case was formerly heard upon motion to dissolve this injunction. Case No. 8.885. Subsequently an amended bill was filed, to which the defendant demurred. The demurrer was overruled. Id. 8,886. It is now heard upon motion of complainant for the appointment of a receiver to take charge of certain of the real estate alleged to have been fraudulently conveyed.]

N. C. M'Lean, Mr. Wright, and Coffin & Miner appeared for complainant.
Mr. Corry, for J. & M. Buckingham.
Mr. Chase, for Lafayette Bank.

LEAVITT, District Judge. The complainant has submitted a motion for the appointment of a receiver, based on his affidavit, setting forth that J. Buckingham and Mark Buckingham, shortly after the decree in bankruptcy against Mahard, entered into the possession of, and have since occupied, without rightful authority, a farm described in the bill, formerly the property of the bankrupt; and that there is now a large amount of rent, in kind, upon the premises, the product of said farm, and under the control of said Buckinghams, who, as judgment creditors of said Mahard, are made defendants to the bill, and whose rights are, therefore, before the court for adjustment. The counsel for the Buckinghams. and the counsel for the Lafayette Bank. appear, and resist the application for the appointment of a receiver. They set forth, in substance, in their statements, that the Buckinghams, having a lien on the said farm, by virtue of a judgment and levy upon it, as creditors of said Mahard, with the consent of the Lafayette. Bank, took possession, after it was abandoned by Mahard, and have since continued to occupy it. It is also stated, that said bank has the prior lien by mortgage upon said farm, and is content that the Buckinghams shall continue in the occupancy thereof, without the intervention of a receiver; they being, as it is alleged, men of substance, and able to respond to the parties interested for the rents and profits which have been or may be received by them.

It is insisted, in the first place, by counsel who oppose this motion, that it ought not to be granted, because previous notice has not been given to the parties interested, of an intention to submit it. The authorities referred to do not sustain the position, that this notice is necessary, under all circumstances. On the contrary, it appears that a court of chancery will sometimes appoint a receiver, on an ex parte application for that purpose; but ordinarily it will not do so until the time for the defendant's appearance has expired, and without an exhibition of facts rendering such summary proceeding necessary. 1 Barb. Ch. Prac. 669. It is believed that no authorities can be produced, proving that no-

tice of the motion is required, in any case, where the parties to be affected by the appointment of a receiver are in court, represented by counsel, who appear in resistance of the motion. It seems to be supposed by counsel that the third rule, of the rules of practice for the courts of equity of the United States, adopted by the supreme court, and, consequently, obligatory on this court, requires a previous formal notice of the pending motion. This rule, however, obviously embraces only applications for "interlocutory orders, rules, and other proceedings," preparatory to the hearing of causes on their merits, made to a judge at chambers, or on rule days, at the clerk's office. It does not apply to a motion made in term, and in the presence of counsel. This motion is also opposed on the ground that the case pending, in which the motion is made, involves a question of jurisdiction between this court and one of the courts of the state; and that until this conflict of jurisdiction is finally settled, the power of this court to appoint a receiver cannot be rightfully exercised. In reply to this objection, Judge McLean, at the last term of this court, after full argument and mature consideration, refused, on a motion for that purpose, to dissolve the injunction granted in this case—maintaining that this court had jurisdiction, under the provisions of the late bankrupt law [of 1841 (5 Stat. 440)], both of the subject matter of, and the parties to, the pending suit. [Case No. 8,885.] After analysing and commenting on the 6th and 8th sections of the bankrupt act, he concludes, that "the jurisdiction vested in this court, under these sections, is complete, and reaches every possible controversy that can arise in the collection and distribution of the effects of the bankrupt." And again, "the act of bankruptcy brings into the bankrupt court all the interests of the bankrupt; and it seems reasonable that the court should exercise an exclusive jurisdiction over those interests." It is true, that in overruling the motion to dissolve the injunction, the judge remarks, that the parties will not be precluded from the discussion of the question of jurisdiction on the final hearing. [See Case No. 8,886.] In this posture of this question, the court will not overrule the present motion, on the ground of a defect of jurisdiction.

These preliminary objections being disposed of, the question is presented, whether, from the facts before the court, it will be a rightful exercise of its power, to appoint a receiver, according to the prayer of the complainant. The power to appoint a receiver pertains necessarily to every court having chancery jurisdiction. In 1 Barb. Ch. Prac. p. 658, it is said: "A receiver is a person appointed by the court, to receive the rents and profits of land, or other property, or things in question in this court, pending the suit, where it does not appear reasonable that either party should do it." "The im-

mediate moving cause of the appointment, is the preservation of the subject of litigation, or the rents and profits of it from waste, loss, or destruction." In Story's Equity Jurisprudence (volume 2, p. 158) it is laid down, that "the appointment of a receiver is a matter resting in the sound discretion of the court." The same principle is asserted in 1 Pow. Mortg. note 294; 1 Johns. Ch. Cas. 57. "It (the appointment of a receiver) may be granted, in any case of equitable property, upon suitable circumstances." 2 Story, Eq. Jur. p. 157, § 829.

What is the case before the court? A bill has been filed in this court by the complainant, as the assignee of Mahard, a bankrupt. It is averred in the bill, that Mahard, at the time of his bankruptcy, was possessed of a large real estate, incumbered by various mortgages and judgments, which he represents as having been procured in fraud of the bankrupt law, and, therefore, void; that proceedings had been instituted by some of the lien holders, in the superior court of Hamilton county, for the purpose of obtaining an adjudication upon their rights; and that in order to the final and satisfactory adjustment of the interests of all the creditors, it was necessary that the liens should be brought into this court, which, under the ample powers conferred on it by the bankrupt law, would possess complete jurisdiction to settle the rights of all concerned. The bill prays an injunction, restraining the mortgagees and judgment creditors from further proceeding in the state court to enforce their liens. The injunction was granted, and still continues in full force. The whole case is, therefore, before this court for a final hearing, and the equitable adjustment of all the interests involved in this controversy. During the pendency of these proceedings, the Buckinghams have been in the occupancy of the farm in question, and are now in possession of a large amount of its products, the rightful ownership of which depends on the final decree and order of distribution to be made by this court. By the operation of the decree in bankruptcy against Mahard, all his interest in the premises, at the time of filing his application, was divested from him, and passed to and vested in his assignee. The assignee, therefore, stands in the position of legal owner of all the bankrupt's estate, and is also the legal representative of all his creditors. Ascertaining there were numerous and conflicting claims and liens on the large real estate of the bankrupt, and having reason to believe, as alleged in the bill, that some of these were fraudulent and void, as being in contravention of the bankrupt law, it was his duty to institute proceedings to test their validity, and to settle the priorities of such as should be adjudged valid. This court, in taking jurisdiction of the case, and enjoining further proceedings to enforce the liens, divested the holders of these liens of all

right and power to interfere with the property to which the incumbrances attached, until the final hearing. Pending the suit in chancery, and while the injunction continued in force, none of the parties could rightfully exercise acts of ownership over the property in controversy. The Lafayette Bank, though represented as having a prior and undisputed lien on the farm, could not, in this posture of the case, without the sanction of this court, either take possession of the property, or give to another a valid assent to take possession. Neither did this right pertain to the Buckinghams, in virtue of their judgment and levy—especially as that judgment is distinctly alleged to be void under the bankrupt law, and as it is one of the objects of the bill to procure the adjudication of this court on that point. The property of the bankrupt may be justly said to have been in the keeping of the law from the time of issuing the injunction, and the rights of the lien holders in a state of suspension till the final hearing.

It would seem, that under these circumstances, the Buckinghams are not in the rightful possession of the farm in question; and it is equally clear that the case made, is one in which a court of chancery should exercise the power pertaining to it, of appointing a receiver. All the lien holders, as well as the general creditors of the bankrupt, Mahard, have an interest in the products of the farm, now under the control of the Buckinghams, and also in the rents and profits accruing, pendente lite; and there is great propriety in placing these in the keeping of a responsible officer of this court, to be held by him, subject to its final order. It is not perceived that this course can, by any possibility, injuriously affect the rights of any of the parties concerned. The assignee, as the representative of the general creditors, asserts that the appointment of a receiver is necessary. And, although the fact be conceded that the Buckinghams are now solvent, and will in all probability be able to respond hereafter to any claim that may be set up against them, growing out of their use and occupancy of the premises, yet, will it be proper to refer the numerous other creditors of the bankrupt to this troublesome, not to say doubtful, remedy, for the recovery of their rights? It is impossible to foresee what change may take place in the circumstances of the Buckinghams before the final adjudication of the rights of the parties concerned in this suit. If they should, in the intervening time, by any adverse fortune, become insolvent, the parties would be without any remedy. But, if no such change shall occur, it is altogether probable that, after the termination of this suit, should it be adverse to their claim, further litigation will be necessary to ascertain and enforce their liability; and, after the lapse it may be of years, such a proceeding would be attended with serious difficulties

and embarrassments, and put the rights of other creditors in great jeopardy.

THE COURT, therefore, entertain no doubt that the case submitted calls for the exercise of its discretionary power in the appointment of a receiver; and the motion of the complainant is, accordingly, granted.

[NOTE. The case was subsequently heard upon the question of the validity of the transfers alleged to be fraudulently made by the bankrupts. Some of these were held to be invalid. Case No. 8,888. Finally it was heard on exceptions to the master's report, which exceptions were overruled. Id. 8,889.]